**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re Application of

RESOURCE INTERNATIONAL HOLDINGS CV and
GILMAR BATISTELA,

                Petitioners,

For an Order to Obtain Discovery Pursuant to
28 U.S.C. § 1782 for Use in a Foreign
Proceeding.

------------------------------------------------------------x

24-MC-430 (JPC) (OTW)

**OPINION & ORDER**

**ONA T. WANG**, **United States Magistrate Judge**:

**I.   INTRODUCTION**

On September 16, 2024, Petitioners Resource International Holdings CV ("Resource Holdings") and Gilmar Batistela ("Batistela") (together, "Petitioners") submitted an *ex parte* application (the "Application") to this Court seeking an order pursuant to 28 U.S.C. § 1782 ("Section 1782") to conduct discovery for use in a criminal investigation (the "Criminal Investigation")[1] and potential civil proceeding (the "Potential Civil Proceeding") in Brazil (together, the "Brazilian Proceedings"). (ECF 2). The Application arises from allegations that two businessmen, Nana Baffour-Gyewu ("Baffour-Gyewu) and Frank Asante-Kissi ("Asante-Kissi") misappropriated funds in connection with Petitioners' sale of three companies (together, the "Companies"). (ECF 2 at 7–8). In the Brazilian Proceedings, Petitioners allege, *inter alia*, that Baffour-Gyewu and Asante-Kissi secretly and improperly transferred money maintained in

---

[1] The Criminal Investigation has been assigned the case number 1508276-53.2024.8.26.0050, and assigned to the Police Investigations Department at the Barra Funda Central Criminal Court of São Paulo. (ECF 3 at ¶ 25).

an escrow account (the "Escrow Account") for contingent liabilities incurred by the Companies for their own benefit. (ECF 2 at 8). Petitioners bring the instant Application to obtain documents from fourteen entities (together, "Respondents") relating to the misappropriation of funds, for use in the Brazilian Proceedings, and which they believe will support their allegations against Baffour-Gyewu and Asante-Kissi. (ECF 2 at 8).

I find that Petitioners have met the requirements to obtain discovery under Section 1782 with respect to all Respondents except for Midas Medici Group Holdings, Inc. ("Midas"). Accordingly, the Application is **GRANTED** as to all Respondents except Midas. The Application is **DENIED** as to Midas, without prejudice to renewal.[2]

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

Batistela is a Brazilian businessman in the information technology sector, and the founder of Resource Holdings. (ECF Nos. 2 at 9, 3 at ¶ 13). Petitioners are complainants in the ongoing Criminal Investigation into Baffour-Gyewu and Asante-Kissi—who are not parties the instant Application—and are also contemplating a Potential Civil Proceeding. (ECF Nos. 2 at 18–19; 3 at ¶¶ 24, 31; 3-10).

Petitioners seek to serve subpoenas on fourteen Respondents:

1. **Citibank, N.A.**, a bank headquartered at 348 Greenwich Street, New York, New York 10013, with offices at 28 Liberty Street, New York, New York 10005 (ECF 10 at ¶ 2);

---

[2] A motion seeking discovery under Section 1782 is non-dispositive under Fed. R. Civ. P. 72(b) and is not on the list of motions exempt from a magistrate judge's jurisdiction. *See* 28 U.S.C. § 636(b)(1)(A); *In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340–41 (S.D.N.Y. 2019). The motion is therefore within the scope of this Court's authority to decide.

2. **Banco Itaú S.A. New York Branch**, a bank with offices at 767 Fifth Avenue, 50th Floor, New York, New York 10153 (ECF 10 at ¶ 2);

3. **BNP Paribas USA, Inc.**, a bank with offices at 28 Liberty Street, New York, New York 10005 (ECF 10 at ¶ 2);

4. **Deutsche Bank Trust Company America**, a bank with offices at 28 Liberty Street, New York, New York 10005 (ECF 10 at ¶ 2);

5. **Itaú CorpBanca**, a bank with offices at 540 Madison Avenue, 24th Floor, New York, New York 10022, 767 Fifth Ave., 50th Fl., New York, New York 10153, and/or 885 Third Ave., New York, New York 10022 (ECF 10 at ¶ 2);

6. **Safra National Bank of New York**, a bank with offices at 546 Fifth Avenue, New York, New York 10036 (ECF 10 at ¶ 2);

7. **Itaú Securities**, a bank with offices at 540 Madison Avenue, 24th Floor, New York, New York 10022, 767 Fifth Ave., 50th Fl., New York, New York 10153, and/or 885 Third Ave., New York, New York 10022 (ECF 10 at ¶ 2);

8. **JPMorgan Chase Bank, N.A.**, a bank with offices at 28 Liberty Street, New York, New York 10005 (ECF 10 at ¶ 2);

9. **The Bank of New York Mellon**, a bank with offices at 240 Greenwich Street, New York, New York 10286 (ECF 10 at ¶ 2)

10. **The Clearing House Payments Company LLC**, a clearinghouse bank for U.S. dollar-denominated wire transfers between domestic and international banks, headquartered at 1114 Avenue of the Americas, 17th Floor, New York, New York 10036 (ECF 10 at ¶ 2);

11. **The Federal Reserve Bank of New York**, a wire-transfer clearinghouse for U.S. dollar-denominate wire transfers between domestic and international banks, headquartered at 33 Liberty Street, New York, New York 10045 (ECF 10 at ¶ 2);

12. **TRG Management LP ("TRG")**, a global asset manager with addresses at 280 Park Avenue, 30th Floor West, New York, New York 10017 (ECF 2 at 10), 28 Liberty Street, New York New York 10005, 271 Madison Avenue, 18th Floor, New York, New York 10016 and/or 65 East 55th St., 15th Floor, New York, New York 10022 (ECF 10 at ¶ 2).

13. **Knox Lawrence International, Inc. ("Knox")**, a private equity firm with addresses at 445 Park Avenue, 20th Floor, New York, New York 10022 (ECF 2 at 11), and 230 Park Ave. Ste. 864, New York, New York 10169 (ECF 10 at ¶ 2); and

3

14. **Midas**, an information technologies company, for which Petitioners had initially provided an address at 445 Park Avenue, 20th Floor, New York, New York 10022 (ECF 2 at 11) but have since provided a new address at 90 State Street, Albany, New York 12207 (ECF 10 at ¶ 2).

Baffour-Gyewu was the Managing Principal of Knox and remains the Vice President of Midas. (ECF 2 at 11).

   **2. The Allegations Against Baffour-Gyewu and Asante-Kissi**

On May 7, 2019, Petitioners entered a stock purchase agreement (the "SPA") with Getronics Ltda. ("Getronics") and Samba Holdings S.A.R.L. ("Samba") (together, the "Purchasers") to sell the three Companies—Resource Holding de Participações Ltda., Resource IT Chile SPA, and Resource IT Columbia S.A.S.. (ECF Nos. 2 at 7–10; 3 at ¶¶ 13–17; 3-3). Asante-Kissi managed the Companies; Baffour-Gyewu managed the Purchasers. (ECF 2 at 8). Simultaneously, Baffour-Gyewu and Asante-Kissi signed a stock purchase letter agreement, which was subsequently amended (the "Side Letter"), (ECF 3-4), by which they agreed that TRG would open, manage, and control the Escrow Account, whose purpose was to cover potential losses in the Companies arising from contingent liability matters. (ECF Nos. 2 at 10–14; 3 at ¶¶ 13–16). The Side Letter stipulated that any remainder in the Escrow Account would revert to Petitioners. (ECF Nos. 2 at 14; 3 at ¶ 17). The Side Letter also provided that Respondent Banco Itaú International would issue approximately six million reais (R$ 6,200,000) in stand-by letters of credit and cash collateral (the "SBLCs") on behalf of Sanjini Ventures LLC—a Florida-based entity managed by Batistela—or Batistela on Sanjini's behalf, also for contingent liability matters. (ECF Nos. 2 at 14; 4 at ¶ 12).

In or about 2023, Petitioners learned that Baffour-Gyewu and the Companies requested transfers from the Escrow Account that did not correspond to legitimate payments for

4

contingent liability matters, as intended, but which they received for their own benefit. (ECF 2 at 8; 4 at ¶ 28). Petitioners assert that Baffour-Gyewu and Asante-Kissi secretly withdrew the total amount of approximately thirty-three million reais (R$ 33,000,000) from the Escrow Account, even though the Companies owed only ten million reais (R$ 10,000,000). (ECF Nos. 2 at 8; 3 at ¶¶ 18–22). Petitioners further assert that, on January 7, 2022, Baffour-Gweyu transferred funds from an account at Respondent Banco Itaú International intended to underwrite the SBLCs for improper purposes. (ECF 2 at 16–17).

### 3. Other Proceedings

On April 13, 2023, Batistela filed a claim against TRG in New York State Supreme Court, New York County, Commercial Division (Index No. 651843/2023), (ECF 4-5), requesting information relating to the Escrow Account (ECF Nos. 2 at 17; 4 at ¶ 29). In that proceeding, TRG disclosed five letters from Baffour-Gyewu with instructions to TRG to release funds from the Escrow Account. (ECF Nos. 2 at 1; 4 at ¶ 29).

On May 26, 2023, Batistela and Sanjini filed a separate action against the Purchasers and Baffour-Gyewu, also in New York County Commercial Division (Index No. 652555/2023), (ECF 4-6), seeking reimbursement of amounts disbursed under the SBLCs. (ECF Nos. 2 at 17–18; 4 at ¶ 30).

On February 29, 2024, Petitioners filed a criminal complaint with the São Paulo State Police, initiating the Criminal Investigation into Baffour-Gyewu and Asante-Kissi. (ECF Nos. 2 at 18–19; 3 at ¶¶ 24, 31; 3-10). Petitioners are also contemplating pursuing a Potential Civil Proceeding against Baffour-Gyewu and Asante-Kissi for their noncompliance with the SPA and the Side Letter. (ECF 2 at 8).

**4. The Subpoenas**

Petitioners now seek to serve subpoenas on Respondents seeking documents regarding the suspect transfers. (ECF 1-1). (ECF Nos. 2 at 8, 21; 4 at ¶ 28). Petitioners assert that these documents will show that Baffour-Gyewu and Asante-Kissi acted together to improperly divert funds from the Escrow Accounts. (ECF 2 at 21). Petitioners' proposed subpoenas to TRG, Knox, and Midas seek documents regarding communications with Baffour-Gyewu, Asante-Kissi, and the Companies regarding the suspect transfers, (ECF Nos. 2 at 21; 4 at ¶ 38), which they hope will show how Baffour-Gyewu and Asante-Kissi used the Companies to transfer assets from the Escrow Account. (ECF Nos. 2 at 22; 3 at ¶¶ 36–39; 4 at ¶ 37).

**B. Procedural History**

Petitioners now seek this Court's assistance in obtaining discovery from Respondents by way of the instant Application. Petitioners commenced this proceeding on September 16, 2024. (ECF 1). In support of their Application, Petitioners submit: a memorandum of law (ECF 2); declarations from Adilson José Vieira Pinto and Luciano Rocha, Petitioners' counsel in Brazil (ECF Nos. 3 and 4); copies of the proposed subpoenas (ECF 2-1); and other exhibits. On April 29, 2025, the Court ordered Petitioners to supplement their Application with addresses for all Respondents, which had not been provided in their initial papers. (ECF 9). On May 6, 2025, Petitioners filed a supplemental declaration with this information. (ECF 10).

**III. DISCUSSION**

**A. Petitioners Satisfy Section 1782's Statutory Requirements as to All Respondents Except for Midas**

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other

6

thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Section 1782 imposes three statutory requirements: (1) that the person from whom discovery is sought either resides or "be found" in the district of the district court to which the petitioner has made their application; (2) that the discovery is "for use" in a proceeding before a foreign tribunal; and (3) that the application is made by a foreign or international tribunal or "any interested person." *In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (citing *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). If a district court has jurisdiction over the petition, it may, in its discretion, grant discovery under Section 1782. *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citing *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)). District courts routinely grant *ex parte* applications pursuant to Section 1782. *Gushlak v. Gushlak*, 482 F. App'x 215, 217 (2d Cir. 2012) (collecting cases) (finding it "neither uncommon nor improper" for a district court to grant *ex parte* applications).

Petitioners satisfy the three statutory requirements under Section 1782 with respect to all Respondents except Midas. Petitioners have shown that all targets, save Midas, are "found" in this District within the meaning of Section 1782, because they all have offices and conduct business in this district. (ECF Nos. 2 at 10–11; 10 at ¶ 2). *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (holding that "found" "extends to the limits of personal jurisdiction consistent with due process"). Petitioners meet the "for use" requirement because they aver that they intend to use discovery obtained here to present evidence in the Criminal Investigation in Brazil and in the Potential Civil Proceeding. *See In re Ibiuna Credito Gestão de Recursos Ltda.*, 24-MC-13 (JGK) (RFT), 2024 WL 1077559, at *8 (S.D.N.Y. 2024), *rep. & rec. adopted sub nom. Ibiuna Credito Gestão de Recursos Ltda v. Goldman Sachs Group Inc.*, 24-MC-

7

13 (JGK), 2024 WL 1076940 (S.D.N.Y. 2024) (collecting cases); *In re Aguila Energia e Participações Ltda.*, 22-MC-0228 (RA) (SLC), 2023 WL 7001445, at *5 (S.D.N.Y. 2023) (finding that Section 1782 discovery is permitted for use in Brazilian criminal proceedings, among other Brazilian proceedings). *See also Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) (noting that a petitioner seeking Section 1782 discovery "must provide some objective indicium that the action is being contemplated"). Finally, Petitioners are "interested persons" under Section 1782 because they are claimants in the Criminal Investigation, and would be claimants in the Potential Civil Proceeding. *Intel*, 542 U.S. at 256; *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) ("[A] complainant in a criminal investigation satisfies the 'interested person' requirement[.]").

The Court cannot ascertain whether Midas is found in the District within the meaning of Section 1782 because, although Petitioners initially provided an address for Midas in the Southern District of New York, they have since supplemented their Application with an address in the Northern District of New York. (*Compare* ECF 2 at 11 *with* 10 at ¶ 2). Accordingly, the Court must deny the Application with respect to Midas. *See* 28 U.S.C. § 1782.

B. **The Discretionary Factors Favor Granting the Application**[3]

Under the framework articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, a district court should consider four factors when deciding whether to exercise its discretion to grant Section 1782 discovery: (1) whether the target of discovery is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the proceedings' character, and the tribunal's

---

[3] Because Petitioners have not satisfied the statutory requirements with respect to Respondent Midas, the Court does not here analyze the subpoena to Midas under the discretionary factors.

8

receptiveness to U.S. federal court assistance; (3) whether the application attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome.  542 U.S. 241, 264–65 (2004).

On the current record, all discretionary *Intel* factors favor granting Petitioners' Application.

First, it does not appear that the targets of discovery are or will be within the Brazilian Court's jurisdictional reach because they are not parties in the Criminal Investigation and will not be parties to the Potential Civil Proceeding.  *See In re del Valle Ruiz*, 939 F.3d at 523.

Second, there is no "authoritative proof" that the Brazilian Courts would not be receptive to Section 1782 relief.  *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 441 (S.D.N.Y. 2024) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[The district court] should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782")).  Rather, Petitioners aver that Brazilian authorities and Courts are receptive to assistance from U.S. District Courts.  (ECF Nos. 3 at ¶¶ 40–41; 4 at ¶¶ 40–41).

Third, there is similarly no evidence that the Brazilian Courts prohibit Petitioners from obtaining the information sought.  *Mees*, 793 F.3d at 303 n.20; *In re Tiberius Grp. AG*, 19-MC-4667 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. 2020) ("Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated.").  (*See* ECF 3 at ¶¶ 40–41).  There is also no evidence that Petitioners seek this discovery to circumvent proof-gathering restrictions imposed by Brazilian law, or that

Petitioners' application is otherwise in bad faith. *See In re Christen Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008) (citing *Euromepa S.A.*, 51 F.3d at 1101).

Finally, the Court has reviewed the subpoenas and document requests at ECF 2-1, and finds that they are not unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265. A subpoena is unduly burdensome if the burden to the subpoenaed party outweighs the value of the information to the serving party when considering: the relevance of the information sought; the party's need for the documents; the breadth of the documents; the time-period the request covers; the particularity with which the documents are described; and the burden imposed. *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). *See* also Fed. R. Civ. P. 26. Petitioners' subpoenas to the eleven banks are narrowly tailored to obtain documents regarding Baffour-Gyewu's and Asante-Kissi's bank accounts and financial transactions, (ECF 2-1 at 43–44), and seek documents and information that those Respondents would be expected to maintain in the ordinary course of business. *See, e.g.*, *In re Ulmans*, 23-MC-23 (GHW)(VF), 2023 WL 3853703, at *6 (S.D.N.Y. Apr. 20, 2023) (finding that a request for documents maintained in the ordinary course of business was not unduly burdensome under Section 1782). The subpoenas to TRG and Knox seek documents regarding communications or financial transactions involving Baffour-Gyewu, Asante-Kissi, and the Companies, (ECF 2-1 at 57, 73), and likewise seek documents and information that those Respondents would be expected to maintain in the ordinary course of business. *See, e.g.*, *In re Ulmans*, 2023 WL 3853703, at *6. Respondents may challenge specific requests by filing a motion to quash or modify pursuant to Fed. R. Civ. P 45(d)(3).

## IV. CONCLUSION

For the foregoing reasons, Petitioners' Application for discovery pursuant to 28 U.S.C. § 1782 is **GRANTED** as to all Respondents except for Midas. The Application is **DENIED** as to Midas, without prejudice to renewal. Petitioners are authorized to serve their proposed subpoenas on all other Respondents by **Friday, May 16, 2025**, if Petitioners have not already done so. If any Respondent seeks to file a motion to quash or a motion for a protective order, they must do so by **Friday, May 30, 2025**.

The Clerk of the Court is respectfully directed to close ECF 1.

**SO ORDERED.**

Dated: May 9, 2025
New York, New York

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge